# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KATYA REED, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,[1]<br><br>v.<br><br>AINS, LLC D/B/A OPEXUS A/K/A CASEPOINT, a District of Columbia Limited Liability Company,<br><br>    Defendant.[2] | Case No. 1:26-cv-202<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF, KATYA REED ("***Plaintiff***"), on behalf of herself and all others similarly situated, brings this class action suit for damages and equitable relief against DEFENDANT, AINS, LLC d/b/a OPEXUS a/k/a CASEPOINT ("***Defendant***" or "***Opexus***"). Plaintiff alleges the following based upon personal information as to allegations regarding herself and the investigation of her counsel, and on information and belief, as to all other allegations:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this Class Action because of Defendant's failure to properly secure and safeguard the personal information of Plaintiff and other similarly situated individuals who provided personal, sensitive data to the Equal Employment Opportunity Commission ("***EEOC***"), which in turn entrusted that data with Defendant.

---

[1] Address: c/o Janove PLLC, 500 7th Ave., 8th Floor, New York, NY 10018. *See* NOT. SEAL PL.'S RES. ADDRESS (filed concurrently).

[2] Address: 1101 17th Street NW, 12th Floor, Washington, DC 20036.

2.      Defendant "sells case management software solutions to the federal government"[3] and as a result, "handles sensitive data for nearly every U[.]S[.] federal agency."[4] This includes, without limitation ("***include***" or "***including***") the EEOC.

3.      In the course of providing services to the EEOC, Defendant collected, stored, and maintained sensitive personal information belonging to individuals who interacted with the EEOC, including Plaintiff and members of the proposed classes ("***Classes***"). *See infra* at 76. That information included names, contact information, and other personally identifiable information ("***PII***").

4.      In February 2025, Defendant experienced a data security incident in which former employees—both of whom had *already* been convicted for hacking and sentenced to two to three years—with privileged system access engaged in unauthorized activity involving EEOC data ("***Data Breach***"). Following the data security incident, the EEOC determined that certain PII may have been exposed. Plaintiff and class members were not notified of the incident until nearly one year later, in January 2026 ("***Data Breach Notice***").

5.      Plaintiff and any and all ("***any***" or "***all***") other persons similarly situated had a right to keep their PII provided to Defendant confidential (the PII provided to Defendant is collectively referred to as "***Sensitive Information***"). Plaintiff and other members of the Classes relied on Defendant to keep their Sensitive Information confidential as required by applicable laws.

---

[3] https://www.nextgov.com/cybersecurity/2026/01/eeoc-experienced-security-incident-involving-contractors-unauthorized-access-email-says/410543/, last visited 20 Jan 2026.

[4] https://www.adminbyrequest.com/en/blogs/government-data-wiped-by-insider-hackers-in-opexus-security-breach, last visited 20 Jan 2026.

6.       Defendant violated this right. It failed to implement or follow reasonable data security procedures as required by law and failed to protect Plaintiff and the proposed class members' Sensitive Information from unauthorized access.

7.       The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect the Sensitive Information it maintains.

8.       As a result of Defendant's failure to implement and follow reasonable security procedures, Plaintiff's and class members' Sensitive Information is now exposed. Plaintiff and class members have spent—and will continue to spend—significant amounts of time and money trying to protect themselves from the adverse ramifications of the Data Breach and dealing with actual fraud and will forever be at a heightened risk of identity theft and fraud.

9.       Plaintiff, on behalf of herself and all others similarly situated, alleges claims for (i) negligence and negligence *per se*; (ii) invasion of privacy; (iii) breach of fiduciary duty; (iv) violation of D.C. Code §§ 28-3900 *et seq.*, the District of Columbia Consumer Protection Procedures Act ("***CPPA***"); and (v) violation of Ga. Code Ann. §§ 10-1-370 *et seq.,* the Georgia Deceptive Trade Practices Act ("***DTPA***").

10.      Plaintiff and the class members seek damages, including nominal damages from Defendant, and to compel Defendant to adopt reasonably sufficient security practices to safeguard the Sensitive Information it maintains to prevent incidents like the Data Breach from re-occurring in the future.

## II.      PARTIES

11.      Plaintiff, Katya Reed, is an individual over the age of eighteen years, and at all times relevant herein, was and is a resident of the County of Coweta in the State of Georgia. In or

around 2017 or 2018, Plaintiff filed a charge with the EEOC. In the course of that process, Plaintiff provided the EEOC with PII, including her name, physical address, and other contact information. Plaintiff further believes that she provided her Social Security number in connection with payment processing.

12.    Defendant is a District of Columbia limited liability company with its principal place of business in Washington, D.C.

13.    Defendant provides "built-for-government case management software"[5] "[t]rusted by 80% of Federal Agencies,"[6] or "more than 45 federal agencies[.]"[7] Defendant has been awarded more than $50 million for its work with the federal government.[8]

14.    Defendant is "owned by the private equity firm Thoma Bravo."[9]

## III.    JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, since, *inter alia*: (i) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; (ii) more than 100 class members are involved; and (iii) many members of the proposed Classes, including Plaintiff, are citizens of different states than the Defendant.

---

[5] https://www.opexustech.com/, last visited 20 Jan 2026.

[6] https://www.opexustech.com/federal-solutions/, last visited 20 Jan 2026.

[7] https://cyberscoop.com/opexus-background-checks-insider-attack-muneeb-sohaib-akhter/, last visited 20 Jan 2026.

[8] https://www.insurancejournal.com/news/national/2025/05/21/824641.htm, last visited 20 Jan 2026.

[9] *Id.*

16.     This Court has personal jurisdiction over Defendant, as it is registered and headquartered in the District of Columbia and conducts substantial business therein, *i.e.*, in this judicial district.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district, and Defendant's acts and practices giving rise to the claims occurred, at least in part, within this judicial district.

## IV.     FACTUAL ALLEGATIONS

### A.     **Background**

18.     Defendant provides case-management and related software services to federal agencies, including the EEOC, and in that role collects, stores and maintains highly sensitive personal information.

19.     Defendant assured the public, users and agencies that their information was secure, promising, for example: "Rest easy knowing your data is in safe hands."[10]

20.     In its Privacy Policy, Defendant further represented that it "deploy[s] commercially reasonable administrative, technical, and physical safeguards designed to comply with applicable legal requirements and safeguard the information that we collect," including obtaining assurances from third parties that they would provide equivalent protections.[11]

21.     Defendant has also represented that it, "OPEXUS[,] takes security very seriously, even exceeding most Federal compliance requirements."[12]

---

[10] https://www.opexustech.com/federal-solutions/, last visited 20 Jan 2026.

[11] https://www.opexustech.com/privacy-policy/, last visited 20 Jan 2026.

[12] https://www.opexustech.com/security/, last visited 20 Jan 2026.

22.     At the same time, Defendant acknowledged that its use of cloud-based and hybrid infrastructure carried heightened security risks, admitting that "a hybrid infrastructure of both public and private cloud environments is less secure than an infrastructure consisting strictly of data centers owned and operated by the user—in this case the government."[13]

23.     Nevertheless, Defendant represented that government agencies could benefit from cloud efficiencies "without fear that their cloud security is falling short," reinforcing the impression that Defendant had adequately mitigated those risks.[14]

**B.      The Data Breach**

24.     As explained in the Data Breach Notice sent to Plaintiff and others in early 2025, "[s]taff employed by [Defendant], with privileged access to systems, were able to handle data in an unauthorized (UA) and prohibited manner."

25.     More specifically, on February 18, 2025, a former employee, in concert with another former employee, of Defendant "copied approximately 1,805 files belonging to the EEOC from the [Opexus]-owned laptop to the USB drive"[15] and "removed" those files.[16]

26.     Public reporting indicates that the employee had been terminated earlier that day during a virtual meeting with Defendant's human resources personnel and retained access to Defendant's systems at the time of the activity.

27.     Shortly thereafter, said other former employee sent an email to employees of government agencies that worked with Defendant stating, among other things, that Defendant

---

[13]   https://www.opexustech.com/wp-content/uploads/2023/09/Benefits-of-FedRAMP-StateRAMP.pdf, last visited 20 Jan 2026.

[14]  *Id.*

[15]   https://storage.courtlistener.com/recap/gov.uscourts.vaed.585302/gov.uscourts.vaed.585302.1.0_1.pdf, last visited 20 Jan 2026.

[16] https://www.insurancejournal.com/news/national/2025/05/21/824641.htm, last visited 20 Jan 2026.

employed "[u]ncleared personnel to work with your data" and that its "databases are insecure, using the same username and password to be accessed by all."[17]

28.    During this same period, said former employee accessed additional federal agency databases from his Opexus-issued laptop and deleted data.

29.    In its Data Breach Notice, the EEOC stated that it subsequently determined that "certain personally identifiable information (PII) may have been exposed. Depending on the individual, this information may have included name and other identifying or contact information."

30.    Following the Data Breach, Kirkland & Ellis retained Mandiant, a cybersecurity firm, "to conduct an independent investigation into the [former employees'] actions."[18]

31.    Although the investigation "didn't turn up evidence of 'malicious activities' by the [former employees] beyond this incident," it "highlight[ed] **'significant failures** in Opexus's cybersecurity practices'"[19] (emphasis added).

32.    Mandiant characterized the copying of 1,805 files onto a USB drive "a major lapse in security measures."[20]

33.    In communications with agency customers, Defendant stated that it had not identified evidence that said former employees exfiltrated sensitive customer information or performed other harmful actions within its network.[21]

34.    Cybersecurity experts at a federal agency affected by the incident reviewed Mandiant's findings and concluded that the incident resulted from "significant failures in Opexus's

---

[17] https://www.theregister.com/2025/12/04/twin_brothers_charged_with_deleting_databases/, last visited 20 Jan 2026.

[18] https://www.insurancejournal.com/news/national/2025/05/21/824641.htm, last visited 20 Jan 2026.

[19] *Id.*

[20] *Id.*

[21] *Id.*

cybersecurity practices … which could have serious implications for the security of sensitive government data."[22]

35.    Public reporting further indicates that said former employees had "been previously convicted of hacking into the U[.]S[.] State Department and had been sentenced to two and three years in prison" ("***Former Employees/Convicted Criminals***").[23]

36.    Defendant subsequently acknowledged wrongdoing where its spokesperson stated:

> As with the onboarding, the terminations [of the Former Employees/Convicted Criminals] were not handled in an appropriate manner. While these individuals passed background checks at the time, this incident made clear that our screening protocols needed to be even more robust.[24]

37.    As a result of the incident, Plaintiff's and class members' Sensitive Information was accessed by unauthorized individuals, in unencrypted and unredacted form.

### C.    **Defendant Knew or Should Have Known of the Foreseeable Risk of Data Compromise, Theft and Misuse**

38.    In 2023, the number of U.S. data breaches surpassed 3,000—a record high and a seventy-two percent (72%) increase in the number of compromises from 2021.[25]

39.    Defendant is a sophisticated data company. It sells case-management software to most federal agencies, is entrusted with sensitive government and individual data, and publicly represents that its systems are secure and exceed federal compliance requirements.[26]

---

[22]    https://www.bloomberg.com/news/newsletters/2025-05-21/how-2-hackers-erased-hundreds-of-foia-requests, last visited 20 Jan 2026.

[23] https://www.bloomberg.com/news/newsletters/2025-05-21/how-2-hackers-erased-hundreds-of-foia-requests; https://www.justice.gov/usao-edva/pr/twin-brothers-guilty-wire-fraud-conspiring-hack-state-department-and-private-company, last visited Jan 2026.

[24] https://cyberscoop.com/opexus-background-checks-insider-attack-muneeb-sohaib-akhter/, last visited 20 Jan 2026.

[25] https://www.idtheftcenter.org/publication/2023-data-breach-report/, last visited 20 Jan 2026.

[26] https://www.opexustech.com/security/, last visited 20 Jan 2026.

40.     As a result, Defendant was well aware that the personal information it maintained—including names, contact information, and other identifying data provided to the EEOC—was highly valuable and posed a foreseeable target for misuse, theft or unauthorized access.

41.     Further, Defendant knew or should have known that insider threats present a well-documented and significant cybersecurity risk, particularly for organizations that grant employees privileged system access.

42.     Defendant also knew or should have known that its own operational environment heightened these risks. Defendant utilized cloud-based and hybrid infrastructure, which it itself acknowledged carries additional security risks if not properly managed. Despite this knowledge, Defendant failed to implement adequate access controls, monitoring and offboarding procedures to protect against foreseeable insider misuse, theft and unauthorized access.

**D.      Defendant Acquires, Collects and Stores Plaintiff's and Class Members' PII**

43.     Defendant acquired, collected, stored, and maintained Plaintiff's and class members' Sensitive Information in the course of providing services to federal agencies.

44.     By acquiring, obtaining, collecting, using and deriving a benefit from Plaintiff's and class members' Sensitive Information, Defendant assumed legal and equitable duties, and knew or should have known it was responsible for protecting Plaintiff's and class members' Sensitive Information from disclosure.

45.     Plaintiff and class members have taken reasonable steps to maintain the confidentiality of their Sensitive Information. Plaintiff and class members relied on Defendant to keep their Sensitive Information confidential and securely maintained, to use this information for business purposes only, to only allow authorized disclosures of this information, and to prevent unauthorized disclosure of the information.

**E.      The Value of PII and the Harmful Effects of Unauthorized Disclosure**

46.    Defendant was well aware of the highly private nature of the Sensitive Information it collects and its significant value to those who would use it for wrongful purposes.

47.    Sensitive Information is a valuable commodity to identity thieves. As the FTC has recognized, identity thieves can commit an array of crimes including identify theft, medical fraud, and financial fraud.[27] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

48.    The ramifications of Defendant's failure to keep Plaintiff's and class members' Sensitive Information secure are long-lasting and severe. Once Sensitive Information is stolen, fraudulent use of that information and damage to victims may continue for years.

49.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Sensitive Information and of the foreseeable consequences if its data security systems were breached, including the significant costs that would be imposed as a result of any breach.

**F.      Defendant Failed to Comply with FTC Guidelines**

50.    The Federal Trade Commission ("**FTC**") promulgates numerous guidelines for businesses highlighting the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[28]

51.    The FTC emphasizes that companies must identify and address foreseeable internal risks, including insider misuse of authorized access. *See FTC Safeguards Rule: What Your*

---

[27] https://consumer.ftc.gov/consumer-alerts/2022/02/how-tell-if-someone-using-your-identity, last visited 20 Jan 2026.

[28] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf, last visited 20 Jan 2026.

*Business Needs to Know* ("[C]onduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.").[29] Here, Defendant entrusted highly sensitive PII belonging to individuals interacting with the EEOC to employees with broad system privileges, yet failed to implement meaningful safeguards to detect or prevent misuse of that access. The Data Breach resulted from exactly the type of insider misconduct the FTC has warned companies to anticipate and mitigate.

52.    FTC guidance also recommends companies to limit employee access to personal information to those with a legitimate business need and to enforce the principle of least privilege. *See Start with Security* at 3 ("Restrict access to sensitive data. If employees don't have to use personal information as part of their job, there's no need for them to have access to it.").[30] Defendant did the opposite. A **_former_** employee and previously convicted and sentenced criminal (of hacking) was able to "copy" and "remove" large volumes of EEOC files, without adequate restrictions, approvals or alerts. Such unrestricted access is inconsistent with the FTC's expectation that access controls be narrowly tailored and actively enforced.

53.    Furthermore, the FTC has made clear that reasonable data security includes monitoring systems for suspicious activity and responding promptly to red flags. *See Protecting Personal Information* at 21 ("Maintain central log files of security-related information to monitor activity on your network so that you can spot and respond to attacks").[31] Defendant failed to deploy effective monitoring or alerting mechanisms capable of identifying abnormal behavior, such as

---

[29]    https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know, last visited 20 Jan 2026.

[30] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf, last visited 20 Jan 2026.

[31]    https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, last visited 20 Jan 2026.

bulk file copying or data transfers to external storage devices. As a result, the unauthorized activity proceeded without timely detection or intervention.

54.     The FTC brings enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("**FTCA**"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

### G.     Defendant Failed to Comply with Industry Standards

55.     The FTC recommends that companies "[u]se industry-tested and accepted methods."[32] Here, Defendant failed to comply with widely accepted industry standards governing the protection of sensitive personal information, particularly for entities handling federal government data.

56.     First, industry standards, including the National Institute of Standards and Technology ("**NIST**") Special Publication 800-53 framework, recognize insider threats as a core cybersecurity risk and require organizations to implement controls addressing that risk.[33] These controls include least-privilege access, continuous monitoring of privileged users, audit logging and immediate revocation of access upon termination. Defendant failed to implement these baseline protections, allowing insiders to misuse authorized access without timely detection.

57.     Second, industry standards require robust offboarding and access-revocation procedures. Employees who are terminated or transitioning out of an organization should have

---

[32] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf, last visited 20 Jan 2026.

[33] https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-53r5.pdf, last visited 20 Jan 2026.

their system access *immediately* disabled to prevent misuse. "Ideally, the moment an employee leaves (or even just before, in cases of termination), all their accounts should be disabled."[34] Defendant failed to do so, permitting continued access during the termination process and enabling the unauthorized copying and removal of sensitive data.

58.    Third, reasonable industry practices require data loss prevention measures to restrict and monitor the movement of sensitive data. Bulk transfers of PII or copying database files to removable media are recognized indicators of compromise that should trigger automated alerts or protective controls. "Blocking USB access limits the potential insider threat risks when someone leaves an organization and takes confidential information with them unknowingly or intentionally."[35] Defendant lacked effective data loss prevention and behavioral analytics, allowing the breach to occur without interruption.

59.    Fourth, as a vendor that markets itself as "trusted by" federal agencies and compliant with federal security requirements, Defendant was expected to operate security controls consistent with those representations. Such includes maintaining security practices commensurate with the sensitivity of EEOC data and the risks inherent in cloud-based and hybrid environments. Defendant's failure to do so fell well below the standard of care expected of a federal contractor handling sensitive government and consumer information.

60.    Finally, industry standards emphasize timely breach detection and notification as essential components of data security.[36] Defendant's prolonged delay in notifying affected

---

[34]    https://www.techclass.com/resources/learning-and-development-articles/cybersecurity-and-employee-turnover-protecting-data-when-staff-leave?, last visited 20 Jan 2026.

[35] https://www.currentware.com/blog/usb-drive-security-best-practices/, last visited 20 Jan 2026.

[36] https://www.v-comply.com/data-security-breach-reporting-and-response-policy-template/, last visited 20 Jan 2026.

individuals deviated from accepted cybersecurity norms and increased the risk of downstream harm.

**H.      Plaintiff and Class Members Suffered Damages**

61.      The ramifications of Defendant's failure to keep Plaintiff's and class members' Sensitive Information secure are long lasting and severe. Once that kind of Sensitive Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.

62.      The Sensitive Information belonging to Plaintiff and class members is private, sensitive in nature, and left inadequately protected by Defendant, which did not obtain Plaintiff's or class members' consent to disclose such Sensitive Information to any other person as required by applicable law and industry standards.

63.      The Data Breach was a direct and proximate result of Defendant's failure to: (i) properly safeguard and protect Plaintiff's and class members' Sensitive Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (ii) establish and implement appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of Plaintiff's and class members' Sensitive Information; and (iii) protect against reasonably foreseeable threats to the security or integrity of such information.

64.      Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures despite its obligation to protect member data. Defendant could have prevented the intrusions into its systems and, ultimately, the theft of Sensitive Information if Defendant had remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field.

65.     As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and class members are now in imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to dedicate time and resources which they otherwise would have dedicated to other life demands, such as work and family, to mitigate the actual and potential impact of the Data Breach on their lives

66.     The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems," and that "resolving the problems caused by identity theft may take more than a year for some victims."[37]

67.     As a direct result of Defendant's failures to prevent the Data Breach, Plaintiff and class members have suffered, will suffer, and are at increased risk of suffering:

(a)     The compromise, publication, theft and/or unauthorized use of their Sensitive Information;

(b)     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

(c)     Lost opportunity costs and lost wages associated with efforts expended and loss of productivity from addressing and attempting to mitigate actual and future consequences of the Data Breach, including researching how to prevent, detect, contest, and recover from identity theft and fraud;

(d)     The continued risk to their Sensitive Information, which is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Sensitive Information in its possession; and

---

[37] https://bjs.ojp.gov/content/pub/pdf/vit12.pdf, last visited 20 Jan 2026.

(e)    Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and class members.

68.    In addition to a remedy for the economic harm, Plaintiff and class members maintain an undeniable interest in ensuring their Sensitive Information is secure, remains secure, and is not subject, *inter alia*, to further misappropriation and theft.

## I.    Defendant's Delay in Identifying and Reporting the Data Breach Caused Additional Harm

69.    It is axiomatic that:

> [t]he more immediate a financial institution, credit card issuer, wireless carrier or other service provider are notified that fraud has occurred on an account, the sooner these organizations can act to limit the damage. In some cases, early notification can also help limit the liability of a victim.[38]

70.    Indeed, once a data breach has occurred:

> [o]ne thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports. And notifying officials can help them catch cybercriminals and warn other businesses of emerging dangers. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves (internal citations omitted).[39]

71.    The Data Breach occurred on February 18, 2025. Defendant was aware of the Data Breach by, at the latest, late February 2025.

72.    Nevertheless, Defendant did not notify Plaintiff and other class members via the Data Breach Notice until early January, 2026, nearly one year after the breach had occurred.

---

[38]    https://www.nbcnews.com/business/business-news/identity-thieves-changing-tactics-steal-your-money-report-says-n508876, last visited 20 Jan 2026.

[39] https://www.consumerreports.org/data-theft/the-data-breach-next-door/, last visited 20 Jan 2026.

73.    As a result of Defendant's delay in identifying and notifying affected individuals of the Data Breach, Plaintiff and class members faced an increased risk of fraud and were deprived of the opportunity to take timely steps to protect themselves.

## V.    CLASS ACTION ALLEGATIONS

74.    Plaintiff brings this action on behalf of herself and on behalf of the following proposed "Nationwide Class," initially defined as follows:

> All individuals whose Sensitive Information stored or possessed by Defendant was subject to the Data Breach.

75.    Plaintiff also brings this action on behalf of herself and on behalf of the following proposed "Georgia Subclass," initially defined as follows:

> All Georgia residents whose Sensitive Information stored or possessed by Defendant was subject to the Data Breach

76.    The Nationwide Class and Georgia Subclass are collectively referred to as the "Classes."

77.    Excluded from the proposed Classes are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

78.    Plaintiff reserves the right to re-define any of the class definitions and/or propose additional subclasses prior to class certification and after having the opportunity to conduct discovery.

79.    The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

80.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

81.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other individuals similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

82.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

83.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the Classes are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are more than one thousand class members in the Classes. The identities of the class members are ascertainable and can be determined based on records maintained by Defendant.

84.     **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

85.     **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include:

(a)     Whether Plaintiff's and the class members' Sensitive Information was accessed and/or viewed by one or more unauthorized persons in the Data Breach alleged herein;

(b)     When and how Defendant should have learned and actually learned of the Data Breach;

(c)     Whether Defendant's response to the Data Breach was adequate;

(d)     Whether Defendant owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their Sensitive Information;

(e)     Whether Defendant breached that duty;

(f)     Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and class members' Sensitive Information;

(g)     Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and class members' Sensitive Information;

(h)     Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and class members' Sensitive Information secure and prevent loss or misuse of that Sensitive Information;

(i)     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

(j)     Whether Defendant caused Plaintiff and class members damages;

(k)     Whether Defendant violated any law by failing to promptly notify class members their Sensitive Information was compromised; and

(l)      Whether Plaintiff and class members are entitled to actual damages, nominal and/or statutory damages, credit monitoring, other monetary relief, and/or equitable relief.

86.      **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiff and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiff and the putative class members. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

87.      **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the class members, and she has retained counsel competent and experienced in complex class action, privacy and data, and consumer litigation. Plaintiff and her counsel will fairly and adequately protect the interest of the class members.

88.      **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the thousands

or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

89.    **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action because:

(a)    the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## VI.    CAUSES OF ACTION

COUNT I

**NEGLIGENCE AND NEGLIGENCE PER SE**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

90.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

91.    Defendant's own negligent conduct created a foreseeable risk of harm to Plaintiff and class members. Defendant's negligence included its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's negligence also included its decision not to comply with (i) industry standards, and/or best practices for the safekeeping and encrypted authorized disclosure of the Sensitive Information of Plaintiff and class members; or, *inter alia*, (ii) Section 5 of the FTC Act.

92.    Defendant had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing its security protocols to ensure Sensitive Information in Defendant's possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained on relevant cybersecurity measures. Defendant also had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and class members' Sensitive Information.

93.    Plaintiff and the class members entrusted their Sensitive Information to Defendant with the understanding that Defendant would safeguard their information.

94.    Defendant was in a position to protect against the harm suffered by Plaintiff and class members as a result of the Data Breach. However, Plaintiff and class members had no ability to protect their Sensitive Information in Defendant's possession.

- 22 -

95.    Defendant had full knowledge of the sensitivity of the Sensitive Information, and the types of harm Plaintiff and class members could, would, and will suffer if the Sensitive Information were wrongfully disclosed.

96.    Plaintiff and class members were the foreseeable and probable victims of Defendant's negligent and inadequate security practices and procedures that led to the Data Breach. Defendant knew or should have known of the inherent risks in collecting and storing the highly valuable Sensitive Information of Plaintiff and class members, the critical importance of providing adequate security of that Sensitive Information, the current cyber security risks being perpetrated, and that Defendant had inadequate hiring and terminating procedures, employee training, monitoring and education and IT security protocols in place to secure the Sensitive Information of Plaintiff and class members.

97.    Defendant negligently, through its actions and/or omissions, and unlawfully breached its duty to Plaintiff and class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and class members' Sensitive Information while the data was within Defendant's possession and/or control by failing to comply with and/or deviating from standard industry rules, regulations, and practices at the time of the Data Breach.

98.    The harm the Data Breach caused is the type of harm privacy laws were intended to guard against. And Plaintiff and class members are within the class of persons privacy laws were intended to protect.

99.    Defendant negligently failed to comply with privacy laws by failing to protect against and prevent the dissemination of Plaintiff's and class members' Sensitive Information to unauthorized third parties.

100.    Defendant's violations of Section 5 of the FTC Act also constitute negligence. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Sensitive Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

101.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and class members' Sensitive Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information it acquired, obtained, and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and class members.

102.    Plaintiff and class members are within the class of persons the FTC Act was intended to protect.

103.    The harm the Data Breach caused, and continues to cause, is the type of harm the FTC Act was intended to guard against. The FTC pursues enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and class members.

104.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of Plaintiff's and class members' Sensitive Information.

105.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and class members the existence and scope of the Data Breach. But

for Defendant's wrongful and negligent breach of duties owed to Plaintiff and class members, Plaintiff's and class members' Sensitive Information would not have been compromised.

106.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the Sensitive Information and the harm suffered, and/or risk of imminent harm suffered, by Plaintiff and class members.

107.    As a direct and proximate result of Defendant's negligence, Plaintiff and class members have suffered, and continue to suffer, injuries and damages arising from the Data Breach, including: damages from lost time and efforts to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months—if not years—to discover, to detect and to remedy.

108.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and class members have suffered, and will continue to suffer, the continued risks of exposure of their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in its continued possession.

## COUNT II
### INVASION OF PRIVACY
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

109.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

110.    Plaintiff and class members had a legitimate expectation of privacy with respect to their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

111.    Defendant owed a duty to Plaintiff and class members to keep their Sensitive Information confidential.

112.    The unauthorized release of Sensitive Information is highly offensive to a reasonable person.

113.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and class members disclosed their Sensitive Information to Defendant, but privately, with the intention that the Sensitive Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

114.    The Data Breach constitutes an intentional interference with Plaintiff's and class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

115.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

116.    Acting with knowledge, Defendant had notice and knew its inadequate cybersecurity practices would cause injury to Plaintiff and class members.

117.    As a proximate result of Defendant's acts and omissions, Plaintiff and class members' Sensitive Information were disclosed to, and used by, third parties without authorization, causing Plaintiff and class members to suffer damages.

118.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and class members in that the Sensitive Information maintained by Defendant may be breached again, leading to further viewing, distributing, and use of updated and additional Sensitive Information by unauthorized persons.

119.    Plaintiff and class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and class members.

<u>COUNT III</u>
**BREACH OF FIDUCIARY DUTY**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

120.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

121.    In light of their special relationship, Defendant became the guardian of Plaintiff's and class members' Sensitive Information. Defendant became a fiduciary, created by its undertaking and guardianship of Plaintiff's and class members' Sensitive Information, to act primarily for the benefit of Plaintiff and class members. This duty included the obligation to safeguard Plaintiff's and class members' Sensitive Information, and to timely notify them in the event of a data breach.

122.    Defendant had—and has—a fiduciary duty to act for the benefit of Plaintiff and class members upon matters within the scope of their relationship. Defendant breached its fiduciary duties owed to Plaintiff and class members by failing to:

(a)    Properly protect the integrity of the system containing Plaintiff's and class members' protected confidential information and other Sensitive Information;

(b)    Timely notify and/or warn Plaintiff and class members of the Data Breach; and

(c)    Otherwise failing to safeguard Plaintiff's and class members' Sensitive Information.

123.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and class members have suffered, and will suffer, injury, including: (i) the loss of the opportunity to control how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out of pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with the effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Sensitive Information in its continued possession; and (vi) future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and class members.

124.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and class members have suffered, and will continue to suffer, other forms of injury and/or harm, and other economic and non–economic losses.

<u>COUNT IV</u>
**VIOLATION OF THE DISTRICT OF COLUMBIA'S CONSUMER PROTECTION PROCEDURES ACT, D.C. CODE §§ 28-3901, ET SEQ.**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

125.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

126.    Defendant's conduct in collecting, storing, and maintaining Plaintiff's and class members' personal information was subject to the CPPA, D.C. Code §§ 28-3901, *et seq.*, and the District of Columbia Consumer Security Breach Notification Act, D.C. Code §§ 28-3851, *et seq.*, which impose an affirmative obligation on covered entities to implement and maintain reasonable safeguards to protect personal information from unlawful use or disclosure.

127.    As alleged above, Defendant failed to meet those obligations. In particular, Defendant violated D.C. Code § 28-3852.01 by failing to "implement and maintain reasonable security safeguards" to protect Plaintiff's and class members' personal information from unauthorized access and disclosure.

128.    Defendant further violated D.C. Code § 28-3852(a) by failing to notify Plaintiff and class members of the Data Breach "in the most expedient time possible and without unreasonable delay," notwithstanding Defendant's superior access to information regarding the nature, scope, and risks associated with the breach.

129.    By violating the District of Columbia Consumer Security Breach Notification Act, Defendant engaged in unfair and deceptive trade practices in violation of D.C. Code § 28-

3904(kk), including conduct that materially misrepresented the security of personal information and delayed required breach notifications.

130.    Plaintiff and the class members seek treble damages or a minimum of $1,500 per violation, reasonable attorneys' fees, punitive damages, and injunctive relief pursuant to D.C. Code § 28-3905(k).

COUNT V

**VIOLATION OF GEORGIA'S DECEPTIVE TRADE PRACTICES ACT,
GA. CODE ANN. §§ 10-1-370 ET SEQ.**
(ON BEHALF OF PLAINTIFF AND THE GEORGIA SUBCLASS)

131.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

132.    Defendant, Plaintiff, and the Georgia Subclass members are all "persons" within the meaning of the DTPA, Ga. Code Ann. § 10-1-371(5).

133.    The DTPA provides that a person engages in a deceptive trade practice when, in the course of business, the person, among other things:

(a)    Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(b)    Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; or

(c)    Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. *Id.* at § 10-1-372(a)(5), (7), (12).

134.    Defendant engaged in deceptive trade practices in violation of Ga. Code Ann. §§ 10-1-372(a)(5), (7), and (12) by omitting and concealing the material fact that it did not employ reasonable measures to secure the sensitive personal information it collected and maintained, and by making implied and express representations that its data security practices were sufficient to safeguard such information.

135.    Defendant acquired Plaintiff's and Georgia Subclass Members' personal information in connection with its provision of case-management and related services to federal agencies, including services involving highly sensitive EEOC data.

136.    By collecting and retaining Plaintiff's and Georgia Subclass Members' personal information, Defendant implicitly represented that it maintained data security practices adequate to protect that information from unauthorized access, misuse, or disclosure. Those representations were false or misleading, as evidenced by the Data Breach and Defendant's failure to implement reasonable safeguards against foreseeable insider misuse.

137.    Although Defendant eventually provided notice of the Data Breach, it failed to provide sufficient detail regarding the full scope of the breach. As a result, Plaintiff and Georgia Subclass Members remain uninformed and confused regarding the adequacy of Defendant's data security practices.

138.    Absent meaningful and disclosed improvements, Plaintiff's and Georgia Subclass Members' personal information remains at an unreasonable risk of future compromise.

139.    Through its omissions and communications regarding the Data Breach, Defendant continues to represent or imply that its data security measures are adequate, without disclosing the full extent of the breach. These ongoing representations create a continuing risk of future harm to Plaintiff and the Georgia Subclass.

140.   Plaintiff and the Georgia Subclass are therefore entitled to injunctive relief because Defendant continues to retain their personal information, future data security incidents are foreseeable, and Defendant has failed to provide sufficient assurances or disclosures demonstrating that its data security practices have been materially improved.

141.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Georgia Subclass have suffered and will continue to suffer injury, including ascertainable losses and non-monetary harms, as alleged herein.

142.   Plaintiff and the Georgia Subclass are also at future risk of injury due to Defendant's continued misrepresentations and omissions concerning the adequacy of its data security practices.

143.   Plaintiff and the Georgia Subclass seek all monetary and non-monetary relief available under the Georgia Deceptive Trade Practices Act, including injunctive relief, attorneys' fees, and costs.

## VII.   REQUESTED RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Classes, respectfully requests that this Court enter judgment against Defendant as follows, *inter alia*:

A.   Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as a representative of the Classes, and designating Plaintiff's counsel as Class Counsel.

B.   Awarding Plaintiff and the Classes all appropriate relief, including:

1.   Compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

2.   Statutory damages;

3.      Punitive damages;

4.      Attorneys' fees, costs and expenses, including expert witness fees; and

5.      Pre- and post-judgment interest.

C.      Granting Plaintiff and the Classes declaratory and equitable relief, including restitution and disgorgement.

D.      Enjoining and restraining, temporarily, preliminarily and permanently, Defendant from continuing to engage in the wrongful acts and practices alleged herein and directing Defendant to certify under oath that it has fully complied with any directive from this Court concerning any injunctive relief.

E.      Granting any other relief as this Court may deem equitable and just.

## VIII.  JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

///

///

///

///

///

///

///

///

- 33 -

Respectfully submitted,

NEWMAN LAW OFFICES

By: ___/s Howard A Newman/___
Howard A. Newman, Esq.
Bar No. 495823
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040
F: (866) 544-8040
howard@newmanlawoffices.com

JANOVE PLLC

Raphael Janove, Esq.
(*pro hac vice* application forthcoming)
500 7th Ave., 8th Fl.
New York, NY  10018
(646) 347-3940
Raphael@Janove.law

BEN TRAVIS LAW, APC

Ben Travis, Esq.
(*pro hac vice* application forthcoming)
12481 High Bluff Drive, Suite 300
San Diego, CA  92130
(619) 353-7966
ben@bentravislaw.com

*Counsel for Plaintiff, Katya Reed, and*
*the Proposed Classes*

Dated: January 23, 2026.